## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JTH TAX, LLC d/b/a LIBERTY TAX
SERVICE,

            Plaintiff,

    v.

MICHAEL MORRELL, MY
BUSINESS GROUP LLC, MY
SERVICES FLORIDA LLC,
ANDREW VULPIS, MY
CONSULTING LLC d/b/a MY
SERVICES, AMA ROYALTY LLC,
and K TAX LLC,

            Defendants.

Case No. 8:24-CV-00237-SDM-CPT

## PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

### STATEMENT OF RELIEF REQUESTED:

Plaintiff JTH Tax LLC d/b/a Liberty Tax Service ("Liberty") respectfully moves the Court for an extension of time to file a Motion for Default Judgment and Permanent Injunction against Defendants Michael Morrell ("Morrell"), My Business Group LLC ("My Business Group"), My Services Florida LLC ("My Services Florida") and K Tax LLC ("K Tax") (collectively, the "Defaulted Defendants" or the

"Morrell Defendants").[1] Liberty humbly requests that the Court extend the deadline until seven days from the entry of an order granting this Motion.

## STATEMENT OF THE BASIS FOR THE REQUEST:

Liberty makes this request in accordance with the Order issued on January 8, 2025 in which the Court denied Liberty's Motion for Default Judgment without prejudice and instructed Liberty to move to extend the deadline within which to move for default judgment under Federal Rule 6(b)(1)(B). *See* ECF 107, pp. 2-3. As demonstrated below, under Federal rule 6(b)(1)(B), there is good cause to extend the deadline and there is excusable neglect for Liberty's failure to request an extension before the expiration of the deadline.

## LEGAL MEMORANDUM SUPPORTING THE REQUEST:

### I.    Factual and Procedural Background

A.    <u>Liberty's Verified Complaint and Motion for Preliminary Injunction.</u>

On January 25, 2024, Liberty filed a Verified Complaint and Motion for Preliminary Injunction. *See* ECF 1, 4. As detailed therein, beginning in 2015, Morrell, My Business Group and My Services Florida executed a series of Franchise Agreements under which they operated six Liberty offices in the Tampa area. *See*

---

[1] Liberty's claims against Defendants Andrew Vulpis ("Vulpis"), My Consulting LLC ("My Consulting) and AMA Royalty LLC ("AMA Royalty") (collectively, the "Non-Defaulted Defendants" or the "Vulpis Defendants") were dismissed pursuant to a Consent Order and Judgment. *See* ECF No. 104.

Verified Complaint ("VC"), ¶¶ 40-80.[2] In December 2023, when those Franchise Agreements were still in effect, the Defaulted Defendants, acting in concert with Vulpis (the office manager) and his companies (My Consulting and AMA Royalty), flipped their Liberty signs and began operating a competing tax business known as "My Services" at the very same locations as their Liberty offices, using the same phone numbers and employees. *See id.*, ¶¶ 103-16.

On December 29, 2023, Liberty terminated the Franchise Agreements for, *inter alia,* breach of the in-term non-competition covenant. *See id.*, ¶¶ 117-23. After termination, Defendants continued to operate their competing tax businesses from the same locations in violation of the post-term non-competition covenant. *See id.*, ¶¶ 124-66. Further, after termination, Defendants solicited Liberty customers and employees in violation of the post-term non-solicitation covenant. *See id.*, ¶¶ 143-56. Defendants also failed to return Liberty's confidential information and trade secrets in violation of the Franchise Agreements, and used them to unlawfully compete. *See id.*, ¶¶ 161-66.[3]

B.    <u>Service of the Verified Complaint and Motion for Preliminary Injunction.</u>

On February 2, 2024, Liberty served My Business Group and My Services

---

[2] Defendant K Tax did not sign the Franchise Agreements, but like Morrell, My Business Group and My Services Florida, K Tax is in default.

[3] The Verified Complaint set forth the following claims: (I) breach of the Franchise Agreements (equitable claim); (II) breach of the Franchise Agreements (monetary claim); (III) conversion; and (IV) violation of the Defend Trade Secrets Act ("DTSA"); (V) unfair competition; (VI) tortious interference; and (VII) conspiracy to tortiously interfere. *See id.*, ¶¶ 185-279. Liberty also sought an injunction enforcing the post-term non-compete and non-solicitation covenants. *See id.*, pp. 60-61.

Florida. *See* ECF 16, 16-1. On February 6, 2024, Liberty served Vulpis, My Consulting, AMA Royalty and K Tax. *See* ECF 17-20. On February 14, 2024, Liberty served Morrell. *See* ECF 31.

C.    Service of the Court's Order scheduling a hearing on the Motion for Preliminary Injunction.

On February 7, 2024, Liberty filed a Motion for a Hearing on the Motion for Preliminary Injunction. *See* ECF 22. On February 14, 2024, the Court issued an Order scheduling a hearing for March 8, 2024. *See* ECF 30. On February 15 and 16, 2024, Liberty served copies of the Order on all Defendants via mail, email and process server. *See* ECF 32-35.

D.    Hearing on Liberty's Motion for Preliminary Injunction.

On March 8, 2024, the Court held a hearing on Liberty's Motion for Preliminary Injunction. *See* ECF 40. Counsel for Liberty and counsel for the Non-Defaulted Defendants appeared at the hearing. *See id*. The Defaulted Defendants did not appear and no counsel appeared on their behalf. *See id.*

On September 18, 2024, Judge Tuite issued a 63-page Report and Recommendation granting in all material respects the Motion for Preliminary Injunction against the Defaulted Defendants and the Non-Defaulted Defendants. *See* ECF 72. On October 7, 2024, the Non-Defaulted Defendants filed an Opposition to the Report and Recommendation. *See* ECF 83. The Defaulted Defendants did not object to the Report and Recommendation. On October 21, 2024, Liberty filed a Response. *See* ECF 85.

On December 11, 2024, after multiple court-ordered mediation sessions with Judge Tuite, Liberty and the Non-Defaulted Defendants filed a Joint Motion for Entry of Final Consent Order and Judgment Against the Non-Defaulted Defendants, in which they stated that they had reached a settlement and presented a proposed Consent Order and Judgment. *See* ECF 99. The Defaulted Defendants did not participate in the court-ordered mediation sessions. On December 26, 2024, the Court entered a Consent Order and Judgment against the Non-Defaulted Defendants, which included, among other things, injunctive relief that was the subject of the Motion for Preliminary Injunction. *See* ECF 104.

E.    Entry of default pursuant to Fed. R. Civ. P. 55(a).

On March 18 and 26 2024, the Clerk entered default against the Defaulted Defendants. *See* ECF 51-53, 60. On January 7, 2025, Liberty filed a Motion for Default Judgment against the Defaulted Defendants. *See* ECF 105.

On January 8, 2025, the Court denied the Motion for Default Judgment without prejudice as untimely under Local Rule 1.1(c), which requires parties to move for default judgment "[w]ithin thirty-five days after entry of default." *See* ECF 107. The Court afforded Liberty the opportunity to move to extend the deadline within which to move for a default judgment by no later than January 24, 2024. *Id.*, p. 2.

## II.    Legal Standard

Federal Rule 6(b)(1) provides that, "When an act must be done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its

extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect." Accordingly, a party seeking to extend an expired deadline needs to show both good cause and excusable neglect. *See id. See also Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 944 (11th Cir. 2015). As discussed below, Liberty respectfully submits that there is good cause to extend the deadline for Liberty of file a Motion for Default Judgment and Liberty's inadvertent failure to timely file was the result of excusable neglect.

## III.    Argument

A.    <u>There is good cause to extend the deadline for Liberty to file a Motion for Default Judgment because Liberty has diligently pursued its claims in this case.</u>

"The diligence of the moving party should be considered in determining whether there is good cause to extend a deadline." *Chittenden v. Hillsborough Cnty.*, 2020 WL 7054551, at *2 (M.D. Fla. Dec. 2, 2020) (quoting *Jozwiak v. Stryker Corp.*, 2010 WL 743834, at *2 (M.D. Fla. Feb. 26, 2010)). "To establish good cause, the party seeking the extension must establish that the schedule could not be met despite the party's diligence." *Doe v. Vali Hosp. LLC*, 2024 WL 3342216, at *1 (M.D. Fla. June 18, 2024). *See also Grandis v. BGIS Glob. Integrated Sols. US, LLC*, 2024 WL 3301200, at *5 (S.D. Fla. Apr. 26, 2024) ("[G]ood cause . . . is shown by the movant demonstrating that the movant is unable to meet the schedule despite their diligence in pursuing the matter."). "If a party was not diligent, the good cause inquiry should end." *Whitcher v. Garrison Prop. & Cas. Ins. Co.*, 2017 WL 11446811, at *2 (M.D. Fla. Nov. 27, 2017)

(quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998)). A party cannot show diligence if they have demonstrated a "history of failure to comply with deadlines and rules in [the] litigation." *Vali Hosp. LLC*, 2024 WL 3342216, at *2.

Here, the record establishes that Liberty diligently pursued its claims in this matter. Liberty filed its Verified Complaint and Motion for Preliminary Injunction on January 25, 2024. *See* ECF 1, 4. This was less than four weeks after Liberty terminated the Franchise Agreements for Defendants' violations of the in-term covenant not to compete and just three weeks after a private investigator confirmed that Defendants had violated the post-term covenant not to compete by continuing to operate a tax preparation business at their former Liberty locations. *See* VC, ¶¶ 117--34. Liberty promptly served each Defendant with process and copies of the Motion for Preliminary Injunction, as follows: (1) on February 2, 2024, Liberty served My Business Group and My Services Florida (*see* ECF 16, 16-1); (2) on February 6, 2024, Liberty served Vulpis, My Consulting, AMA Royalty and K Tax (*see* ECF 17-20); and (3) on February 14, 2024, Liberty served Morrell (*see* ECF 31).[4]

Shortly after filing the Verified Complaint and Motion for Preliminary Injunction, on February 7, 2024, Liberty promptly filed a Motion for a Hearing, which the Court granted on February 14, 2024. *See* ECF 22, 30. Liberty promptly served each Defendant with copies of the Court's Order and Notice of Hearing within days. *See*

---

[4] Liberty notes that its process servers began attempting to serve Morrell on February 1, 2024. *See* ECF 31. The process server attempted to serve Morrell on February 1, 2024, February 2, 2024, February 3, 2024, and February 12, 2024 before competing service on February 14, 2024. *See id.*

ECF 32-35.

On March 8, 2024, Liberty's counsel appeared at the hearing on the Motion for Preliminary Injunction and participated in more than two hours of arguments. *See* ECF 40. At the hearing, the Court requested supplemental briefing from the parties by March 18, 2024 and March 25, 2024. *See* ECF 44. Liberty complied with these requests. *See* ECF 55, 57. While the Motion for Preliminary injunction was *sub judice*, the parties filed a Uniform Case Management Report, which contained aggressive deadlines for resolving the case, culminating in a March 2025 trial date. *See* ECF 61.

Liberty diligently engaged in discovery in accordance with the deadlines in the Uniform Case Management Report. On September 11, 2024, Liberty served written discovery on the Non-Defaulted Defendants, consisting of document requests and interrogatories to Vulpis and My Consulting. *See* Messenger Decl., ¶ 4. On September 19, 2024, Liberty served its Rule 26 Initial Disclosures. *See id.*, ¶ 5. On October 7, 2024, Liberty served requests for admissions on Vulpis. *See id.*, ¶ 6. On October 24, 2024, Liberty noticed the deposition of Andrew Vulpis for November 19, 2024. *See id.*, ¶ 7.

Thereafter, Liberty participated in two court-ordered mediation sessions with Judge Tuite on November 6, 2024 and November 11, 2024. *See* ECF 89-90. These mediation sessions led to a settlement and consent judgment between Liberty and the Non-Defaulted Defendants. On December 11, 2024, while the Non-Defaulted Defendants' objections to the Report and Recommendation were pending, Liberty and the Non-Defaulted Defendants filed a Joint Motion to Request Entry of a Final Consent Order and Judgment (including extensive injunctive relief) against the Non-

Defaulted Defendants. See ECF 99. On December 26, 2024, the Court issued an order
granting the Joint Motion and entering judgment against the Non-Defaulted
Defendants. Less than two weeks after the order entered, Liberty filed its Motion for
Default Judgment against the Defaulted Defendants. *See* ECF 105.

For the reasons set forth above, Liberty submits that it diligently pursued its
claims in this matter. Liberty's diligence resulted in the Court issuing a comprehensive
Report and Recommendation to grant its Motion for Preliminary Injunction on
September 18, 2024 and entering a consent judgment against the Non-Defaulted
Defendants on December 26, 2024, which resolved many of the issues that were the
subject of the Motion for Preliminary Injunction against the Defaulted Defendants and
the Non-Defaulted Defendants. *See* ECF 72, 104. Accordingly, there is good cause to
extend the deadline for Liberty to file its Motion for Default Judgment against the
Defaulted Defendants.

> B.  <u>Liberty's failure to request an extension before the expiration of the time
> within which to move for default judgment is the result of excusable
> neglect.</u>

"[E]xcusable neglect under Rule 6(b) is a somewhat elastic concept and is not
limited strictly to omissions caused by circumstances beyond the control of the movant
[requesting an extension]." *Williams v. Sirmons*, 2008 WL 709238, at *1 (M.D. Fla.
Mar. 14, 2008) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S.
380, 392 (1993)) (brackets in original). "The decision whether neglect is excusable 'is
at bottom an equitable one, taking account of all relevant circumstances surrounding
the party's omission.'" *Id.* (quoting *Pioneer Inv. Servs.*, 507 U.S. at 395). *See also Sloss*

*Industries Corp. v. Eurisol*, 488 F.3d 922, 934 (11th Cir. 2007) ("The determination of what constitutes excusable neglect is generally an equitable one, taking into account the totality of the circumstances surrounding the party's omission.").

Quoting the Supreme Court case of *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, the Middle District of Florida recently described excusable neglect as follows:

> There is a "range of possible explanations for a party's failure to comply with a court-ordered filing deadline." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 387 (1993). "At one end of the spectrum, a party may be prevented from complying by forces beyond its control, such as by an act of God or unforeseeable human intervention." *Id.* "At the other, a party simply may choose to flout a deadline." *Id.* at 387-88. "In between lie cases where a party may choose to miss a deadline although for a very good reason, such as to render first aid to an accident victim discovered on the way to the courthouse, as well as cases where a party misses a deadline through inadvertence, miscalculation, or negligence." *Id.* at 388.
>
> When empowered to forgive late filings because of "excusable neglect," courts are "permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *See id.*

*Edwards v. CIS Servs., LLC*, 2019 WL 4060160, at *2 (M.D. Fla. Aug. 28, 2019).

"In analyzing excusable neglect, the court should look at (1) the danger of prejudice to the non-movant, (2) the length of the delay and its possible impact on the judicial proceedings, (3) the reason for the delay, and (4) whether the movant acted in good faith." *Kirkland v. Guardian Life Ins. Co. of Am.*, 352 F. App'x 293, 297 (11th Cir. 2009). "Primary importance should be accorded to the absence of prejudice to the

nonmoving party and to the interest of efficient judicial administration." *Hoffman v. Strobel*, 2016 WL 11110424, at \*2 (M.D. Fla. Dec. 13, 2016) (quoting *Maixner v. U.S.*, 2007 WL 4462944, at \*2 (M.D. Fla. Dec. 14, 2007)).

As discussed below, each of the four factors for finding excusable neglect are satisfied in this case.

> 1. *There is no danger of prejudice to the Defaulted Defendants because, had Liberty filed a Motion for Default Judgment within thirty-five days of the Clerk's defaults, it would have been denied because default judgment cannot enter against some defendants, but not others, when there is a risk of inconsistent judgments.*

Federal Courts in Florida routinely deny without prejudice to refile Motions for Default Judgment against some, but not all defendants, where there is a possibility of inconsistent judgments between defaulted and non-defaulted defendants. *See, e.g., Matz v. McCormick Trucking, Inc.*, 2024 WL 733977, at \*2 (M.D. Fla. Feb. 2, 2024) (recommending court deny without prejudice motion for default judgment for risk of inconsistent judgments and ordering plaintiff to refile within fourteen days after resolution of claims against non-defaulted defendant); *Daka Research, Inc. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, 2022 WL 17583434, at \*1 (S.D. Fla. Oct. 27, 2022) (recommending court deny without prejudice motion for default judgment because there was a "possibility of inconsistent judgments between the Defaulting and Non-Defaulting Defendants . . ."); *Cardinale v. Wang*, 2021 WL 7543624, at \*2 (M.D. Fla. Sept. 13, 2021) (denying without prejudice motion for default judgment because "entering a default judgment now would create a risk of inconsistent judgments"); *Millennium Funding, Inc. v. 1701 Management LLC*, 2021 WL

5389897, at *34 (S.D. Fla. Nov. 18, 2021) (denying without prejudice motion for default judgment because "granting [d]efault [j]udgment would create an unnecessary risk of inconsistent judgments"); *Island Stone Int'l Ltd. v. Island Stone India Priv. Ltd.*, 2016 WL 9488685, at *2 (M.D. Fla. Dec. 20, 2016) (denying without prejudice motion for default judgments because "entering a default judgment against only [one defendant] raises the possibility of inconsistent judgments should [the other defendant] go on to successfully defend against Plaintiffs' claims").

In *Cardinale v. Wang*, the Middle District of Florida recently explained that denying Motions for Default Judgment where there is a risk of inconsistent judgments is consistent with the Supreme Court case of *Frow v. De La Vega*, 82 U.S. 553, 554 (1872), as follows:

> A just reason for delay exists when a default judgment would create a risk of inconsistent judgments. *Frow v. De La Vega*, 82 U.S. 553, 554 (1872); *Akbik v. Abdul-Hakeem*, No. 8:18-CV-511-EAK-AAS, 2018 WL 6790259, at *1 (M.D. Fla. Sept. 21, 2018). The leading case on the issue is the Supreme Court's decision in *Frow v. De La Vega*, in which the plaintiff alleged that multiple defendants engaged in a joint conspiracy to commit fraud. *Frow*, 82 U.S. at 54. When one of the defendants failed to defend, a default judgment was entered against him. *Id.* The remaining defendants subsequently prevailed on the merits. *Id.* The Supreme Court vacated the default judgment, finding it "absurd" to have one judgment sustaining the charge of joint fraud and another disaffirming the same charge. *Id.* To avoid this outcome, the Court stated that the default judgment should have been withheld until the claim was adjudicated on the merits. *Id.*

2021 WL 7543624, at *2 (M.D. Fla. Sept. 13, 2021). *See also Nationwide Mut. Fire Ins. Co. v. Creation's Own Corp., S.C.*, 2011 WL 6752561, at *6 (M.D. Fla. Nov. 16, 2011) ("This district has followed *Frow* and has been sensitive to the risk of inconsistent judgments.").

"The Eleventh Circuit has extended *Frow*'s reasoning beyond joint liability, to 'similarly situated' defendants." *Cardinale*, 2021 WL 7543624, at *2 (citing *Gulf Coast Fans v. Midwest Elec. Imps.,* 740 F.2d 1499, 1512 (11th Cir. 1984)). "Defendants are similarly situated when they have closely related defenses which could, as a matter of logic, exonerate the defendant who defaulted." *Id. See also Gulf*, 740 F.2d at 1512 (holding it was inconsistent to enter default judgment on breach of contract claim because non-defaulting defendant could prove plaintiff breached the same contract); *Soriano v. Asem Hasan*, 2018 U.S. Dist. LEXIS 81551, at *6-7 (M.D. Fla. Apr. 27, 2018) (delaying default judgment on a claim under the Americans with Disabilities Act because non-defaulting defendant could prove that the facility at issue complied with law); *Rodriguez v. Guacamole's Authentic Mexican Food & More, LLC*, 2012 WL 718688, at *2 (S.D. Fla. Mar. 6, 2012) ("Several Circuits, including the Eleventh [Circuit], have found *Frow* applies to situations where defendants . . . have closely related defenses.").

Defendants are also "similarly situated" when there are allegations that they acted in concert to violate the law. *See Daka Rsch., Inc.*, 2022 WL 17583434, at *3 (recommending court deny motion for default judgment because of risk of inconsistent judgments where complaint alleged that defendants were "working in active concert"

to violate the law).

Here, had Liberty filed its Motion for Default Judgment within thirty-five days of the Clerk's default, it would have been denied for risk of inconsistent judgments because the Defaulted Defendants and the Non-Defaulted Defendants are similarly situated for at least two independent reasons.

First, the Defaulted Defendants and the Non-Defaulted Defendants had closely related defenses which could have exonerated the Defaulted Defendants after default judgment entered against them. *See Cardinale*, 2021 WL 7543624, at *2. The Verified Complaint sets forth claims against the Defaulted Defendants for: (1) breach of the Franchise Agreements (equitable claim); (2) breach of the Franchise Agreements (monetary claim); (3) conversion; (4) violation of the DTSA; (5) unfair competition; and (6) conspiracy to tortiously interfere. *See id.*, ¶¶ 185-251, 270-79. The Verified Complaint also sets forth claims against the Non-Defaulted Defendants for: (1) conversion; (2) violation of the DTSA; (3) unfair competition; (4) tortious interference; and (5) conspiracy to tortiously interfere. *See id.*, ¶¶ 221-79. Each of the claims asserted against the Defaulted Defendants and the Non-Defaulted Defendants arises from the Defaulted Defendants' breaches of the Franchise Agreements. If any of the Defendants successfully defended against the claims by establishing that the Defaulted Defendants did not breach the Franchise Agreements—e.g., the Defaulted Defendants did not breach the in-term or post-term covenants not to compete, the Defaulted Defendants did not breach the post-term covenant not to solicit customers or employees, and the Morrel Defendants did not breach their post-term obligations to return confidential

information, transfer telephone numbers and assign leases—then arguably Liberty's claims against the other Defendants would fail as well.

Second, the Verified Complaint contains allegations that the Defaulted Defendants and the Non-Defaulted Defendants acted in concert to breach the Franchise Agreements. *See Daka Rsch., Inc.*, 2022 WL 17583434, at *3. *See also* VC, ¶¶ 258-60 ("Vulpis, My Consulting, AMA Royalty and K Tax directly interfered with the Franchise Agreements by inducing, causing, aiding and abetting, conspiring with, and/or acting in concert or participation with the Franchisee Defendants to breach the Franchise Agreements by opening and operating a competing tax business known as "My Services" at the Franchisee Defendants' former Liberty franchise locations in direct violation of the non-compete covenants in the Franchise Agreements."). Specifically, the Verified Complaint alleges that the Non-Defaulted Defendants took steps to establish a competing tax preparation business at the former Liberty franchise offices during the term of the Franchise Agreements and while Vulpis was working for Morrell (and his companies) as their general manager, and that these steps ultimately resulted in Vulpis (and his company) taking over five former Liberty offices from the Defaulted Defendants during the term of the Franchise Agreements. *See* VC, pp 2, 11-15, 22-25, 30-35. Based on the evidence that Liberty presented in support of these allegations, the Court expressly found in the Report and Recommendation that the Defaulted Defendants and the Non-Defaulted Defendants did act in concert to violate the Franchise Agreements. *See JTH Tax, LLC v. Morrell*, 2024 WL 4905422, at *20 (M.D. Fla. Sept. 18, 2024) ("This conduct by Vulpis—and, by extension, the Vulpis-

related entities—sufficiently shows that they acted in 'active concert or participation' with Morell and the other Franchisee Defendants in violating the Franchise Agreements.").

Accordingly, because Liberty's Motion for Default Judgement would have been denied without prejudice had Liberty filed it by the deadline in Local Rule 1.10(c), the Defaulted Defendants have not been prejudiced because the end result would have been the same. Liberty would have been instructed to refile the Motion for Default Judgment after its claims against the Non-Defaulted Defendants were resolved to avoid the risk of inconsistent judgments. This is effectively what happened because Liberty filed the Motion for Default Judgment twelve days after the Court entered the consent judgment against the Non-Defaulted Defendants, which obviated any issue with inconsistent judgments. *See* ECF 104, 105.

Finally, Liberty notes that if Liberty is not correct that its Motion for Default Judgment would have been denied because of risk of inconsistent judgments had it been timely filed, Liberty's delay in filing the Motion for Default Judgment actually *benefited* the Defaulted Defendants in this case. The standard for removing a Clerk's default under Rule 55(c) is much less onerous than the standard for vacating default judgment under Rule 60(b). *See Skypoint Advisors, LLC. v. 3 Amigos Prods. LLC.*, 2019 WL 13165458, at *3 (M.D. Fla. Mar. 27, 2019) ("[S]etting aside a default *judgment* under Fed. R. Civ. P. 60(b) requires the application of a more stringent standard than setting aside a clerk's default under Fed. R. Civ. P. 55(c).") (emphasis supplied). Liberty's delay in filing the Motion for Default Judgment effectively gave the

16

Defaulted Defendants an additional nine months to appear in the case and seek removal of the Clerk's default. Had the Defaulted Defendants appeared during those nine months, they would have had a much easier path forward in defending themselves against Liberty's claims by seeking to remove the Clerk's default, rather than a default judgment. In these unique circumstances, Liberty's delay in filing the Motion for Default Judgment actually benefited the Defaulted Defendants.

2. <em>The length of the delay did not have an impact on the judicial proceedings in this case.</em>

As discussed above, Liberty's delay in filing the Motion for Default Judgment did not have an impact on judicial proceedings in this case because, had Liberty timely filed the Motion under Local Rule 1.1(c), it would have been denied for risk of inconsistent judgments. Liberty would have had to wait to refile the Motion until after judgment entered against the Non-Defaulted Defendants, which is what actually took place. *See* ECF 104. Judgment entered against the Non-Defaulted Defendants on December 26, 2024 and Liberty filed the Motion for Default Judgment less than two weeks later on January 7, 2025. Accordingly, Liberty's delay had no impact on the length of the proceedings.

Furthermore, Liberty's delay did not cause the case to stagnate. *See Sweetwater Invs., LLC v. Sweetwater Apartments Loan, LLC*, 2011 WL 1545076, at *1, 4 (M.D. Ala. Apr. 25, 2011) (finding excusable neglect and holding several-month delay did not impact proceedings, in part, because "the litigation was far from stagnant" during delay). During the period of delay, Liberty actively engaged in discovery, including

17

serving document requests, interrogatories, requests for admissions, initial disclosures
and a deposition notice on Vulpis. *See* Messenger Decl., ¶¶ 4-7. Liberty also
aggressively pursued settlement with the Non-Defaulted Defendants, including
participating in multiple mediation sessions, which culminated in a settlement
agreement and consent judgment with the Non-Defaulted Defendants. *See* ECF 104.
Liberty's prosecution of its claims during the delay period further establishes that the
delay did not impact the judicial proceedings. *See Sweetwater Invs., LLC,* 2011 WL
1545076, at *4 (holding delay did not impact proceedings because "during the delay,
the parties actively and vigorously engaged in discovery and settlement discussions").

### 3.    *The reason for the delay was an inadvertent calendaring error.*

Federal Courts in Florida regularly find excusable neglect and extend deadlines
when counsel inadvertently makes calendaring errors. *See, e.g., Bhogte v. Phoenix Mgmt.
Servs., Inc.*, 2022 WL 1469389, at *1 (S.D. Fla. May 10, 2022) (finding excusable
neglect where failure to timely request default was caused by "inadvertent calendaring
error"); *Vieczorek v. Khorrami*, No. 3:17-cv-1118-J-32JBT, at *1 (M.D. Fla. July 8, 2019)
(finding excusable neglect where failure to timely file answer was caused by counsel's
"inadvertent calendaring issue"); *Bivins v. Rogers*, 2016 WL 10571036, at *2 (S.D. Fla.
Dec. 16, 2016) (finding excusable neglect where "counsel simply overlooked the email
which constituted the service of discovery requests so the deadline was not properly
calendared"); *Mead v. IDS Prop. Cas. Ins. Co.*, 2013 WL 12157838, at *2 (M.D. Fla.
Nov. 26, 2013) (finding excusable neglect where failure to timely file motion was
caused by "counsel's clerical error in calendaring the deadline for the submission");

*Bermudez v. Equifax Info. Servs., LLC*, 2008 WL 11336164, at *2 (M.D. Fla. Oct. 3, 2008) (finding good cause and excusable neglect where counsel failed to "properly calendar the discovery cut-off dates"); *Sirmons*, 2008 WL 709238, at *1-2 (finding excusable neglect where delay in filing motion was caused by counsel's "inadvertent calendaring error"); *Brother v. Rossmore Tampa Ltd. P'ship*, 2004 WL 3609350, at *2 (M.D. Fla. Aug. 19, 2004) (finding excusable neglect for failure to timely oppose motion where delay was caused by counsel's "mistake in calendaring the motion"). *See also Walter v. Blue Cross & Blue Shield United of Wisconsin,* 181 F.3d 1198, 1201-202 (11th Cir. 1999) (finding excusable neglect where the reason for delay was counsel's failure to calendar a motion).

These Florida cases are consistent with cases in District Courts throughout the Eleventh Circuit. *See, e.g., J.V.O. v. Fulton Cnty. Sch. Dist.*, 2019 WL 12433361, at *2 (N.D. Ga. May 17, 2019) (finding excusable neglect where delay in filing Answer was caused by counsel "neglect[ing] to input the filing date for Defendant's answer into the counsels' calendaring software"); *Gooden v. Internal Revenue Serv.*, 2014 WL 12693846, at *4 (N.D. Ga. Feb. 24, 2014) (finding excusable neglect where delay in filing Answer was caused by "an error in calendaring"); *Sweetwater Invs., LLC*, 2011 WL 1545076, at *5 (finding excusable neglect where delay in filing answer was "based upon a failure to place the deadline on a calendar"); *Philpot v. Blue Cross Blue Shield of Georgia*, 2008 WL 11407269, at *1 (N.D. Ga. July 14, 2008) (finding excusable neglect where delay in filing opposition to motion for summary judgment was caused by counsel's inadvertent calendaring error).

Here, the reason for Liberty's delay in filing the Motion for Default Judgment was an inadvertent calendaring error. Shortly after the Clerk entered defaults on March 18, 2024, Liberty's counsel calculated the deadline to move for default judgment under Local Rule 1.1(c) to be April 22, 2024. *See* Messenger Decl., ¶ 8. Liberty's counsel, however, mistakenly calendared the April 22, 2024 deadline in their appointment book under the name of another federal court action being handled by GRSM's Boston office in which the defendants had also defaulted. *See id.*, ¶ 9.[5] Liberty's lead counsel, Jim Messenger, humbly apologizes for this inadvertent calendaring error of the April 22, 2024 deadline, but notes that he had a press of business at the time and billed more than 210 hours in March 2024, and more than 2,300 hours in 2024. *See id*. Liberty's counsel did not realize the inadvertent calendaring error until the Court denied the Motion for Default Judgment. *See id.*, ¶ 11.

### 4. *Liberty acted in good faith in missing the deadline.*

Florida federal courts have held that the good faith factors for excusable neglect is met where there is no indication that the moving party intentionally missed a deadline to gain an advantage in the litigation. *See e.g., Blake v. Enhanced Recovery Co., LLC*, 2011 WL 3625594, at *3 (M.D. Fla. Aug. 17, 2011) ("As to the fourth factor, it appears that Plaintiff has acted in good faith. There is no evidence that Plaintiff acted in bad faith, and no reason to believe she wanted the delay or has gained any advantage from it."); *McCoy v. Dep't of Educ.*, 2023 WL 11842712, at *1 (M.D. Fla. Nov. 3, 2023)

---

[5] In that other matter, the defendants filed for bankruptcy on March 26, 2024 and the entire action was stayed, so moving for default judgment became moot. *See id.*, ¶ 9.

("There is no indication that [plaintiff] has not acted in good faith or has sought to delay the action."); *Bivins v. Rogers*, 2016 WL 10571036, at *2 (S.D. Fla. Dec. 16, 2016 ("Here, it appears to the Court that Plaintiff did act in good faith and that his counsel simply overlooked the email which constituted the service of discovery requests so the deadline was not properly calendared."). *See also Sweetwater Invs., LLC*, 2011 WL 1545076, at *5-6 (holding that good faith factor was met where "[t]he nonfiling was simply an innocent oversight by counsel" and "there is no suggestion that counsel for Defendants purposefully ignored the deadline").

Here, there is no indication that Liberty intentionally missed the deadline to file the Motion for Default Judgment or that it gained any advantage in the litigation. Again, had Liberty timely filed the Motion for Default Judgment, it would have been denied for risk of inconsistent judgments. Liberty would have had to refile the Motion after judgment entered against the Non-Defaulted Defendants, which is exactly what happened because Liberty filed the Motion for Default Judgment less than two weeks after the Court entered the consent judgment against the Non-Defaulted Defendants. *See* ECF 104, 105.

Moreover, the record establishes that Liberty litigated this case in good faith. Liberty filed this case on January 25, 2024 promptly after terminating the Franchise Agreements and confirming that Defendants had breached their post-term covenants and obligations. *See* ECF 1, 4. Liberty promptly served all Defendants with process and copies of the Motion for Preliminary Injunction. *See* ECF 16, 16-1, 17-20, 31. Liberty promptly requested a hearing on the Motion for Preliminary Injunction and

served notice of the hearing on all Defendants. *See* ECF 22, 32-35. Liberty participated in the hearing and filed multiple post-hearing briefs. *See* ECF 40, 55, 57. While the Motion for Preliminary Injunction was *sub judice*, Liberty engaged in discovery by serving interrogatories, documents requests, requests for admissions, initial disclosures and a deposition notice. *See* Messenger Decl., ¶¶ 4-7. Liberty also aggressively pursued settlement, including multiple mediation sessions with Judge Tuite, which ultimately resolved Liberty's claims against the Non-Defaulted Defendants less than eleven months after the case was filed. *See* ECF 89-90, 104-05.

## IV.    Conclusion

For the reasons set forth above, Liberty respectfully requests that the Court grant this Motion and extend the deadline for it to file a Motion for Default Judgment until seven days after the entry of an order granting the Motion.

Dated: January 17, 2025.

Respectfully submitted,

*/s/ Andrew R. Schindler*
FBN 124845
*aschindler@grsm.com*
**GORDON REES SCULLY MANSUKHANI, LLP**
100 SE 2nd Street, Suite 3900
Miami, Florida 33131
T: (305) 428-5329

*/s/ James Messenger, Esq.*
*Admitted Pro Hac Vice*
**GORDON REES SCULLY MANSUKHANI, LLP**
21 Custom House Street, Fifth Floor

Boston, MA 02110
T: (857) 263-2000
*jmessenger@grsm.com*

**Peter G. Siachos**
*Admitted Pro Hac Vice*
**GORDON REES SCULLY MANSUKHANI, LLP**
One Battery Park Plaza, 28th Floor
New York, NY 10004
T: (646) 808-6358
*psiachos@grsm.com*
***Attorneys for Plaintiff JTH Tax LLC***
***d/b/a Liberty Tax Service***

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned hereby certifies that the movant attempted to confer with the opposing parties in a good faith effort to resolve the motion via email on January 15, 2025, but the opposing parties were unresponsive. In accordance with Local Rule 3.01(g)(3), undersigned counsel will try diligently to contact the opposing party and advise the Court either when a response is received from the opposing party as to their position on Plaintiff's Motion, or when the three days under Local Rules 3.01(g)(3) expires, whichever occurs first.

*/s/ Andrew R. Schindler, Esq.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed via the Court's electronic filing system and served on counsel of record for

Defendants Andrew Vulpis, My Consulting LLC and AMA Royalty electronically through the filing system. The undersigned also certifies that a true and correct copy of the foregoing was served on the remaining Defendants by first class mail and Fedex on January 17, 2025, as follows:

1. Michael Morrell
   520 Osprey Landing Drive
   Lakeland, FL 33813

2. My Business Group LLC
   2944 S Florida Avenue
   Lakeland, FL 33803

3. My Services Florida LLC
   1802 E Busch Boulevard
   Tampa, FL 33612

   and

   My Services Florida LLC
   2944 S Florida Avenue
   Lakeland, FL 33803

4. K Tax LLC
   2944 S. Florida Avenue
   Lakeland, FL 33803

*/s/ James L. Messenger, Esq.*